TUCKER, Judge.
The equity stated in the appellee’s bill of injunction is merely, That, upon the trial of the writ of right in which the now appellants were demandants and -himself defendant, at which he intended to have been present, and was on his way, but was attacked by a fit of the gout, and obliged to return, his counsel offered in evidence to support his title, the copy of a deed from Charles Carter to him, and the copy of a survey thereto annexed, and also the *copy of a deed from John Spicer to Robert Carter, under whom the said Charles held the lands in controversy; but that the same being objected to by the counsel for'the demand-ants, the court of Essex county, where the trial was had, refused to suffer them to go to the jury, as will more at large appear by a copy of the record, to which he refers as a part of his bill. That if he had been present he could have made the necessary affidavits, that the original deed from Carter to him, and the survey thereto annexed, were lost; and that the original deed from Spicer to Carter'could not be found. That in consequence thereof, and for want of the necessary affidavit, the jury found for the demandants, who had obtained a writ of possession, and dispossessed him of the lands with the crops growing thereon, and have sued out an execution for the costs. He therefore prays for an injunction to the said judgment and execution until further order, and for a new trial of the cause; and if there be a verdict in his favour, that the demandants may be decreed to restore the lands, and pay for the crops, and for general relief. The chancellor awarded an injunction, and afterwards granted a new trial, directing the verdict to be certified to the high court of chancery. Upon the second trial, a verdict being found for the tenant, the chancellor rejected a motion for another trial, grounded on the affidavits of two of the jurors, stating an agreement among the jury, to render a verdict according to the opinion of a majority; and awarded a perpetual injunction to the judgment, with a restitution of the lands: Erom which decree there is an appeal to this court.
Among the exhibits in this record, is the record of the proceedings in Essex county, referred to in the complainant’s bill; which contains a bill of exceptions offered at the first trial, by the tenant’s counsel, stating, That the defendant, by his counsel, offered a copy of a deed from John Spicer to Robert Carter, in these words, “this indenture, &c.,” as also a copy of a deed from Charles Carter to John Hord (the tenant) in these words, “this indenture, &c.,” as evidence*to the jury, but that the court would not allow the same to go to them, as they considered the original deeds ought to have been produced: To which opinion he excepted, &c. Among the exhibits in this suit, are office copies, certified in the usual manner, of a deed from John Spicer to Robert Carter, dated March 13th, 1717; and one from Charles Carter and wife, to John Hord, dated May 25th, 1787; which I presume may be the deeds severally referred to in the bill of exceptions. And, as these copies, by the long established usage in this country, are held, (where there is no suggestion of fraud,) to be admissible as evidence, although the originals be not proved to be lost, I was at first of opinion, that the chancellor ought not to have awarded an injunction, since there was error, upon the face of the record, sufficient to have reversed the judgment, and afforded the tenant the benefit of.a new trial; but it being suggested in the bill, that the demandant had obtained a writ of possession, and dispossessed the tenant of the land, with the crops thereon growing ; and the bill praying a compensation for those crops, as at the time of executing the writ of possession, I think the injunction was properly awarded upon that ground, inasmuch as a court of error could not, I apprehend, have awarded such a recompense, although it should have appeared proper to reverse the judgment, and award restitution of the land itself.
I shall now state the titles of the parties, as they either appeared from the exhibits *957 in the canse, or may be conjectured to be, from presumptions arising- out of those exhibits.
The demandants produce a patent granted the 16th of June, 1714, for 816 acres of land; of which, 560 acres were formerly granted to captain Alexander Fleming, by patent bearing date Sept. 4th, 1667; and the courses, distances and corners of this patent, by the late survey, agree as well with the survey made an hundred years, or more, after the first grant, as is usual in grants of lands. This patent appears, from this circumstance, to have been an inclusive patent; and its operation, as to the part formerly ^granted to captain Fleming, must, I presume, be referred to the date of his original patent, vii-,. Sept. 4th, 1667. This inclusive patent was granted to Samuel Dishman, the demandant’s ancestor; who, by his will dated November 15, 1726, devised all his lands in Essex, to be equally divided between his sons David and Peter in fee simple. And, from the testimony of James Dishman his son, it appears that these lands were all he had in Essex county; and that David Dishman paid quit-rents for 800 acres in 1740, appears from an exhibit in the record.
In what manner the demandants deduced their title from David and Peter, the dev-isees of the original grantee, does not appear. Nor can it be material, after the release of errors, provided they shall now shew an equitable title superior to the tenant’s. Nor does it from the evidence in this record appear, whether any evidence was given of an actual adverse seisin in either party, except that the answer states, that satisfactory testimony, as to the complainant’s possession, was given at the first trial, but leaves it wholly to conjecture what that satisfactory testimony was.
It appears, both from the bill of exceptions and the answer of the defendants, that the only title which the tenant shewed at the trial, was his possession, and a deed from John Spicer, dated March 13th, 1717, three years later than Dishman’s patent, dated the 16th of June, 1714; and a deed from Charles Carter and wife, to Hord, dated May 25th, 1787: of a more important defect in which, I shall take notice hereafter. And, with respect to the tenant’s possession, the answer expressly avers, that the demandants produced satisfactory testimony to that point; which indeed after a general verdict must be presumed.
If then, these deeds, which were excepted to, had been permitted to go to the jury as evidence, they ought, notwithstanding such evidence, to have found, as they did, a verdict for the demandants. For, unless the tenant’s title was regularly deduced from an older patent than that under which the demandants claim, the demandants, unless barred by length of time, were unquestionably entitled to a verdict.
*If it be true, that courts are to judge, “secundum allegata et pro-bata,” only, on the coming in of the answer, the chancellor ought to have dissolved the injunction, and dismissed the complainant’s bill. For the deeds presented an inferior title only; and the answer, which was not disproved, shewed that the tenant had not a sufficient length of possession to protect his seisin.
To judge from the exhibits in this cause, the tenant founds his right, first, upon his possession; secondly, upon a deed from Charles Carter and wife to himself, dated May 25th, 1787; thirdly, upon a deed of lease and release from John Spicer to Robert Carter, dated in March 1717; fourthly, upon deeds of lease and release from Thornton (whose title does not appear) to Spicer, dated in December 1714; fifthly, upon a patent granted to Thomas; and, by him, assigned, without any consideration mentioned in the assignment, to Spicer, Oct. 28, and March 10th, 1697; and lastly, upon a patent to Spicer, April 29th, 1693; which was forfeited for not seating, as appears by Thomas’s patent.
1. The tenants’ possession maj be presumed to have commenced under the deed from Charles Carter to him in May 1787. His bare possession therefore, was no bar to the demandants; it not having been long enough to have barred an ejectment; and much less a writ of right.
2. The deed from Charles Carter has two fundamental defects, supposing these lands in controversy, to lie in the the county of Essex, where the suit was brought; for the lands in that deed are not said to lie in Essex, but in Caroline. Consequently, if the suit was brought in the right county, that deed was wholly inadmissible; for Caroline county being taken from Essex, the court would officially take notice that lands in Caroline could no longer lie in Essex, although the original grants might have been made of la.nds in Essex. For although ancient patents and deeds for lands in Essex county may well be given in evidence in Caroline, that county having been taken from Essex, yet deeds for lands in Caroline, can never be given in evidence, *for lands in Essex, because they must have been made since the division of the latter county. On the other hand, if Carter’s deed be right, and the lands in controversy actually lie in Caroline, the suit was brought in the wrong county. And if that were made appear to the court, they should have directed the plaintiff to be called; for this matter, I apprehend, might have been given in evidence at the trial under our act of assembly. Virg. Eaws, ch. 27. So that the verdict in this case, was either against evidence, (Carter’s deed being inadmissible if the lands in controversy lie in Essex,) or the verdict was coram non judice, and therefore void. In either case, then, the verdict ought not to stand.
A second fundamental defect in Carter’s deed to Hord is, that it does not convey a whole tract of land, (in which case the metes and bounds of former deeds, or of the patent, might establish the bounds of the lands with certaintj',) but a small part only of a verj' large tract, without mentioning any metes and bounds whatever; the words are, “all that tract or parcel of land in the county of Caroline, being part of a larger tract called Powmansued, and containing according to the survey made by *958 Richard Dixon, and hereto annexed, 1143 acres, more or less, within the bounds contained by the survey aforesaid. ” But there is no such survey in the record, nor among the exhibits, as that referred to. The deed itself, without the survey, is void for uncertainty. Whether the survey was actually annexed to the deed when proved and recorded, does not appear. But, if the lands lie in Essex, it was recorded in the wrong-county, namelj”-, in Caroline. The quantity contained in Spicer’s patent, being nearly or quite three times the quantity contained in Carter’s deed to Hord, and no metes and bounds being mentioned in the deed, and the survey referred to not appearing, the jury had no guide whereby to locate the lands granted to Hord; and consequently were not authorized to presume that they were within those limits of Spicer’s patent, which might possibly overreach the bounds of Dishman’s patent.
*But were the case free from these objections, I should not, from the survey made in this cause, be satisfied that Spicer’s patent was properly laid down. The courses and distances do not appear to me to agree. A more extensive survey, commencing at the beginning, mentioned in the patent, appears to me to be necessary. Dor, although the double Poplar may, perhaps, be a corner of Spicer’s patent, yet I think that fact will better be ascertained by going round the courses as they are laid down in the patent, than by reversing two or three lines, as has been done in this case.
Upon all these grounds, I am clearly of opinion, that the last decree of the chancellor ought not to stand. But I am somewhat in doubt, what decree ought to be made.
1. Por, if the lands'really lie in Caroline, the trial in Essex, being coram non judice, would be no bar to Hord’s recovering back the lands even by an ejectment, if the actual possession be in him'. If then,, the court should decree that his bill be dismissed, he will have an immediate remedy at law to reinstate him in his possession.
2. If the lands do not lie in Caroline, I doubt very much whether this court, sitting as a court of equity, can, upon the circumstances disclosed in this record, direct the court of Essex to admit a deed importing to be for lands in Caroline, upon the trial of a writ of right in Essex county. .
3. If the survey referred, to in Carter’s deed, was not' annexed to, and proved and recorded with it, I still further doubt, whether even a court of equity could sustain it, as proper evidence between contending parties; being of opinion that it would, in such case, be merely void, as a conveyance, for uncertainty, although possibly good, between the parties thereto, as- a covenant.
4. As the counties of Caroline and Essex lie in different districts, there would be the same objection, if the lands lie in Caroline, to . a trial in the district court of Essex; and, if they lie part in one, and part in the other of those counties, the same objection will still remain; the only jurisdiction competent to the trial at law, in such a case as that last ^'mentioned, would, I apprehend, be the general court. Virg. Laws, 1794, ch. 65, sect. 3.
If then, the court should be of opinion that the bill ought not to be dismissed, I think the cause should be remanded to the court of chancery, with directions to that court, to permit the bill and answer to be amended, so as to bring the whole case fully before the court: and if it should then appear to that court that the lands actually lie in Caroline, that the complainant’s bill be dismissed without prejudice. But if it should appear that the lands lie in Essex; and, if that court should be of opinion that Carter’s deed to Hord, .with the survey therein referred to and said to have been annexed, or a copy thereof, attested by the clerk of Caroline court, ought to be admitted in evidence upon a new trial to be had between the parties, that a new trial be had accordingly, and such evidence admitted, and the verdict of the jury certified to the high court of chancery. But if it should appear to that court, that the lands lie partly in Caroline and partly in Essex, and that a new trial ought to be had, and the evidence above mentioned admitted, then such new trial to be had in the general court, with similar directions.
ROANE, Judge.
New trials in equity are not held to such strict terms as those at law. The object being to satisfy the conscience of the chancellor, considerable latitude is allowed to answer that purpose. In cases where the issue is moved for on the ground of a surprize at the trial, if the party applying were the plaintiff, the new trial will, in general, be refused, because the party had a more direct course to pursue, viz. by suffering a non-suit. Richard v. Symes, 2 Atk. .319. Ours, however, is the case of a defendant. The same authority, by proving that a new trial shall not be grounded on an alleged surprize arising from the production of evidence which the party had reason to believe would-be produced, and which therefore he ought to have been prepared to meet, is supposed to have established *the general doctrine on the converse of the proposition. At least that doctrine is founded .in good sense.
Eet us try the present case by it.
I presume that Hord and his counsel had reasonable ground to conclude, when-they went into the trial, that their copies would be admitted as evidence. To say nothing of the question of law on this subject, the universal practice authorized such a conclusion. Hord might therefore reasonably have inferred that his presence would be ■unnecessary. He could not foresee the course the business would take, nor that this objection would have been produced, as it seems to have been produced, by the conduct of his counsel. When he first heard of the event of his suit, the court had probably risen, or, if not, the members had probably changed, so that an application for a new trial to that, court would have been ineffectual. His counsel, it is true, had taken an exception to the opinion of the cou.rt, but it is holding Hord to too strict a measure to subject his cause to the e.vent of the decision of that legal question. He had a safer course to pursue, and which would have been pursued, had not the unusual objection to his deeds been made, and *959 he prevented by accident from being present.
Under these circumstances, tlie appellee ■was condemned without a hearing; notwithstanding, as now appears from the event of the second issue, that he had right on his side.
Will a court of equity be satisfied by a verdict and judgment obtained under such circumstances? I think not. Without therefore undertaking to say that a court of equity will, as was argued, rejudge a mere legal question, a. power heretofore disclaimed by this court, this case comes before us under circumstances which rendered the interposition of a court of equity proper. I think, therefore, that the chancellor was right in awarding a new trial.
Whether he ought to have been satisfied with the verdict returned upon that new trial, is a question upon which my judgment has vibrated. The best opinion I can ultimately form is that he ought to have been so satisfied. As for the affidavits of the two jurymen, it would be extremely dangerous *to admit them to have the effect to impeach the verdict. No case on this subject has gone so far. What else is there? The opinion of the court of Essex on the second trial, rejecting some of the appellee’s deeds, is certainly no ground whereon the appellant can apply for a new trial, however it might be e con-verso : Nor is it any ground for the appellant’s application, that the division of the court, upon the admissibility of his deed, injured him, by making an unfavourable impression on the jury. That deed was nevertheless submitted (in which case the appellant fared better than the appellee) ; and a pretence of this kind might as well be set up in every case of a division of opinion by the court.
It has been said, from a quarter entitled to great respect, that, inasmuch as the lands in question lie in Essex, it was. improper in the court to admit in evidence Carter’s deed to Hord, which speaks of lands lying in Caroline.
This description in that deed is an imperfect and an incomplete one. It is imperfect, because the deed also refers for the bounds of the land to Dixon’s survey, said to be thereunto annexed. If that survey were so annexed, or were given in evidence, and shewed the lands m question to lie in Essex and not in Caroline, can any person doubt but that it would control the imperfect description before stated? Certainly not. But even if this survey had not been mentioned in the deed, would not parol evidence be admissible to shew that some part of the tract, described to lie in Caroline, actually lay in Essex?
A much greater latitude than that has been sanctioned by this court. In Eppes v. Randolph, 2 Call, 130, in a deed, the consideration whereof was expressed to be natural love and affection, the grantee was nevertheless allowed to aver and prove the real consideration to have been marriage, thereby giving a new and overreaching influence to the deed.
In the case before us, the clerk of Essex has subjoined a transcript of the papers read in evidence on the second trial, among which Dixon’s survey is not: We may therefore conclude that that survey was not, in fact, exhibited; *and the question is, Whether an omission to produce it was fatal? Whether it could not be supplied by other testimony?
It is a sound principle, that that is certain which can be rendered certain. In a grant of lands according to its known and reputed boundaries at such a day (without specifying them in the deed) is certainly good, and these bounds are to be made out by evidence at the trial. In the deed before us, the case is left less at large as to boundaries ; they are not to depend upon inferences to be drawn from testimony in general, but are made to depend upon the bounds contained in Dixon’s survey. That survey is not declared to be a part of the deed, and although it is said to be hereunto annexed, it is only by way of identifying the particular paper which contains the boundaries.
I admit that regularly this survey ought to have been shewn in evidence; but if it were proved that this survey was lost, and no authenticated copy could be produced, might not the bounds of that survey be proved by other testimony? Such for example as the testimony of the surveyor Dixon, attending in court with his field book, or the acknowledgment of the alleged bounds on the part of the appellants. If we are in quest of substance, and not forms, and the survey is not part of the deed, but only a standard referred to therein for the ascertainment of the bounds, shall we not suppose, in the absence of all objection on the part of the appellants at the trial, that the survey, if not produced, was supplied? Why shall a latent objection, not made at the time, surprize us, when, if made, we might have shewn of record that our case would stand the test of objection.
I cannot suppose, therefore, that improper testimony was exhibited. I will presume the contrary. With respect to the actual identity of the boundaries of this land, I presume not to form an opinion. It is sufficient for me that the jury have passed upon it. I do not see that their verdict is contrary to the right of the cause. That jury had testimony and light which are not now before us. It is on account of the incompetency of the judge to decide the merits himself, that he sends the issue to a jury, who may have conflicting *testi- ' mony to adjust, and credibility to determine. The verdict is therefore entitled to respect.
On the ground therefore of this verdict being unimpeachable, as to its fairness; of there being no erroneous opinion of the cottrt except in prejudice of the party prevailing, which therefore makes his case the stronger, and of this being a cause depending perhaps very much upon testimony which is wholly shut out from us, I am for permitting the last verdict to be conclusive, and affirming the decree.
The case of Eitzhugh must stand or fall with that of Hord.
CARRINGTON, Judge.
Accident suppressed the plaintiff’s evidence, and therefore the chancellor was authorized to interfere. Ross v. Pines, 3 Call, 568; Ambler *960 v. Wyld, 2 Wash. 36. It does not appear that any part of the lands lie in Caroline, which obviates all objections upon that score. The second trial was not only fairly conducted, but there might have been other testimony before the jury than that which appears in the record: and, as there is -no proof to the contrary, I presume that every thing was properly transacted, and am for affirming the decrees.
LYONS, President.
The interposition of the chancellor was right, as accident and surprize prevented the introduction of the copies. The defendant submitted to the new trial; and therefore comes with an ill grace, after taking his chance for a second verdict, to object to the order directing the issue. There is nothing to impeach the second trial; for the affidavits of the two jurors that they did not agree to the verdict, is of no weight. Such testimony ought to be received with great caution, as it would lead to tampering with juries; and therefore ought not to be encouraged. In all other respects, the trial was according to .the usual course; and, as it seems to have been entirely fair, every presumption ought to be made in support of the verdict.
Both decrees are to be affirmed.